UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>Plaintiff,<br><br>- vs -<br><br>GOTTI ENTERPRISES LLC,<br>d/b/a GOTTI'S RESTAURANT & BAR,<br>d/b/a GOTTI'S RESTAURANT, and<br>d/b/a GOTTI'S, and<br><br>IRVIN J. WILLIAMS,<br><br>Defendants. | CASE NO.: |

**COMPLAINT**

Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff"), by and through its attorney, for its Complaint against Defendants, (1) Gotti Enterprises LLC, *doing business as* Gotti's Restaurant & Bar, *doing business as* Gotti's Restaurant, and *doing business as* Gotti's, and (2) Irvin J. Williams, individually and as a member, manager, officer, and/or principal of Gotti Enterprises LLC, d/b/a Gotti's Restaurant & Bar, d/b/a Gotti's Restaurant, and d/b/a Gotti's (collectively, "Defendants") hereby alleges as follows:

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) as this civil action is brought under the Communications Act of 1934, as amended, 47 U.S.C. § 553 and 47 U.S.C. § 605.

2. Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

3. Plaintiff, JOE HAND PROMOTIONS, INC. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 213 W. Street Rd., Feasterville, Pennsylvania 19053. Plaintiff held the sole and exclusive commercial license to distribute and authorize the public display of the audiovisual closed-circuit broadcast of the *Canelo Alvarez vs. Jermell Charlo* boxing match, including all undercard bouts and commentary, telecast on September 30, 2023 (the "Program") for businesses such as the business made the basis of this case. Plaintiff held the right to authorize the exhibition of the Program publicly at commercial locations in the State of Texas.

4. Defendant, GOTTI ENTERPRISES LLC

a. is a domestic limited liability company organized and existing under the laws of the State of Texas,

b. conducts business in the State of Texas,

c. may be served by serving its Registered Agent, Isaiah Edwards at its registered office located at 606 N Nagle Street, Houston, Texas 77003,

d. conducted business as "Gotti's Restaurant & Bar" on the date of the Program,

e. conducted business as "Gotti's Restaurant" on the date of the Program,

f. conducted business as "Gotti's" on the date of the Program,

g. owned, operated, maintained, and controlled the commercial business known as Gotti's Restaurant & Bar/Gotti's Restaurant/Gotti's located at 811 St. Emanuel St., Houston, Texas 77003 (the "Establishment") on the date of the Program,

h. held the active sales tax permit issued by the Texas Comptroller of Public Accounts for the Establishment on the date of the Program, and

i. held an active alcohol license/certificate issued by the Texas Alcoholic Beverage Commission for the Establishment on the date of the Program.

5. Defendant, IRVIN J. WILLIAMS

a. is an individual who resides in the State of Texas,

b. may be served at 606 N Nagle Street, Houston, Texas 77003 or wherever found,

c. operated, maintained, and controlled the Establishment on the date of the Program,

d. was an owner of the entity owning and operating the Establishment on the date of the Program,

e. was a member, manager, officer, and/or principal of the entity owning and operating the Establishment on the date of the Program,

f. had a right and ability to supervise the activities of the Establishment on the date of the Program, and

g. had an obvious and direct financial interest in the activities of the Establishment on the date of the Program.

## FACTS

6. Plaintiff is a company that specializes in distributing and licensing premier sporting events to commercial, non-residential establishments including bars, restaurants, clubhouses, shops, and similar locations. By written agreement, Plaintiff was granted the sole and exclusive license to distribute and authorize the public display of the Program to businesses such as the Establishment. The Program broadcast originated via satellite uplink and was subsequently re-transmitted interstate to cable systems and satellite television companies via satellite signal. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program.

7. Plaintiff entered into subsequent agreements with various commercial establishments in the State of Texas that, in exchange for a fee, allowed them to exhibit the Program to their patrons. In consideration of the aforementioned agreements, Plaintiff expended substantial monies to market, advertise, promote, administer, and transmit the Program to those establishments in the State of Texas.

8. The Program was legally available to the Defendants for exhibition in the Establishment only after paying a commercial sublicense fee for the Program to Plaintiff, which fee was determined by the capacity of the Establishment. Defendants, however, chose not to contract with Plaintiff and pay the proper commercial sublicense fee to Plaintiff. Instead, Defendants, themselves and/or through their agents, servants, and/or employees, took affirmative steps to circumvent the commercial sublicensing requirement and unlawfully obtained the Program via an over the air signal or, in the alternative, via a cable signal, whether by misuse of television services, internet, or other devices.

9. In an effort to avoid paying the proper commercial sublicense fee to Plaintiff, some methods used by commercial locations to unlawfully obtain the broadcast of the Program include, but are not limited to, the illegal interception and/or receipt of the Program via an over the air signal or cable signal by:

- Intercepting and redirecting television service from a nearby residence,
- Registering their business location as a residence,
- Moving a receiver from a residence to their business,
- Obtaining the Program in violation of the terms of their television service provider agreement, and/or
- Exploiting restricted online access to the Program by streaming the Program over the internet through a limited number of legitimate online distributors offering the Program for *non-commercial use only*.

10. Legitimate *non-commercial* distributors of the Program clearly limit the use of their services or online applications to residential, personal, and/or non-commercial use only. Undeterred, commercial locations ignore the warnings, terms and conditions, agreements, and online application restrictions of legitimate *non-commercial* distributors of the Program. The signal, transmitted over the air or by cable, is intercepted and unscrambled by the purchase of the Program for viewing on a personal device or in a residence. Then, commercial locations unlawfully broadcast the Program commercially.

11. Defendants willfully engaged in wrongful acts to intercept and/or receive the Program for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate customers paid substantially more for the proper commercial sublicense. Defendants knew, or should have known, the interception and/or receipt and exhibition of the Program at their Establishment was not properly authorized.

12. The broadcast of the Program at the Establishment was not for private viewing and was not for residential, non-commercial purposes. The exhibition of the Program at the Establishment was advertised on social media. The Establishment sold food and/or drinks on the date and during the broadcast of the Program. The public display of the Program at the Establishment was to entice patrons to the Establishment to spend money while viewing the Program.

13. Defendants intentionally pirated or assisted in the intentional piracy of the Program for the purpose of their own economic gain. Defendants exhibited the Program for the commercial purposes of attracting paying customers, patrons, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights.

14. Defendants did not have license, authorization, permission, or consent from Plaintiff to exhibit the Program in the Establishment.

15. In addition, by virtue of his position(s) as it relates to the Establishment, Defendant, Irvin J. Williams had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment at all relevant times.

16. At the time of the wrongful conduct described herein, Defendants' agents, servants, and employees were in fact Defendants' agents, servants, and employees and acting within the scope of their employment and authority as Defendants' agents, servants, and employees.

PIRACY - 47 U.S.C. § 605 OR, ALTERNATIVELY, 47 U.S.C. § 553

17. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

18. Defendants' unauthorized exhibition of the Program was accomplished through the interception and/or receipt of a signal transmitted over the air or, in the alternative, transmitted via cable. Defendants' violation was willful and for purposes of commercial advantage or private financial gain.

19. Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 605. By reason of Defendants' violation of 47 U.S.C. § 605, Plaintiff has standing and capacity to bring a private right of action.

20. Pled in the alternative, Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 553, and by virtue of same, Plaintiff has standing and capacity to bring a private right of action.

21. Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate (in the alternative to the extent necessary) 47 U.S.C. §§ 605 or 553.

22. Accordingly, Plaintiff is entitled to judgment in its favor and against each Defendant for statutory damages, in the discretion of this Court, plus interest, costs, and attorney's fees pursuant to 47 U.S.C. § 605 or, alternatively, pursuant to 47 U.S.C. § 553.

PRAYER

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against each Defendant as follows:

a. for statutory damages, in the discretion of this Court, of up to the maximum amount of $10,000.00 for the violation of 47 U.S.C. § 605 or, alternatively, for the violation of 47 U.S.C. § 553,

b. for additional statutory damages, in the discretion of this Court, of up to the maximum amount of $100,000.00 for the willful violation of 47 U.S.C. § 605 or, alternatively, for additional statutory damages, in the discretion of this Court, of up to the maximum amount of $50,000.00 for the willful violation of 47 U.S.C. § 553,

c. for Plaintiff's attorney's fees, interest, and costs of suit pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to 47 U.S.C. § 553(c)(2)(C), and

d. for such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
SDTX No. 566838
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.